THE STATE, EX REL. AURELIUS B. HULL ET AL. v. HENRY C. KELSEY, SECRETARY OF STATE.

The act of June 10th, 1890, entitled "An act relative to banking, saving, trust, guarantee, safe deposit, indemnity, mortgage, investment, loan and building corporations," is intended to treat exclusively of financial corporations and associations, such as banking companies, savings institutions and others designed to derive profit from the loan or use of money and securities, and does not apply to a corporation organized under the General Corporation act as a safe deposit company, one of its objects as stated in the certificate of incorporation filed, being "to keep and maintain safe deposit vaults and safes and strong boxes for the safe keeping of valuable articles and property of all kinds;" the right to deal in money and securities being expressly withheld from corporations formed under the General Corporation act.

---

On rule for *mandamus.*

Argued at February Term, 1891, before Justices KNAPP and REED.

For the relators, *Mahlon Pitney.*

For the respondent, *Allan L. McDermott.*

The opinion of the court was delivered by

KNAPP, J.　The relators are incorporators of The Morristown Safe Deposit Company.　The corporation is organized under the provisions of the "Act Concerning Corporations." A certificate of incorporation under the name stated was duly executed by the relators, and recorded in the clerk's office of Morris county, in which the corporation purposes conducting its business.　Thereafter, in observance of the provisions of the eleventh section of said act, the relators presented to the secretary of state (the respondent) the said certificate, asking that it be filed in his office, at the same time tending to that officer the fee of $25 due by law to the state upon such filing. The respondent refused to receive and file the instrument of incorporation, and still refuses to do so.

The respondent denies to the relators the privilege claimed by them, on the ground solely that the proposed corporation is excluded from the right of filing its certificate in his office by the provisions of an act of the legislature entitled "An act relative to banking, savings, trust, guarantee, safe deposit, indemnity, mortgage, investment, loan and building corporations," approved June 10th, 1890 (*Pamph. L., p.* 427), for the reason that the relators have failed to comply with its requirements in two essential particulars, viz., that it has a capital of less than $100,000, and has not received the approval of the state board of bank commissioners.

The relators have chosen a name for their corporation that is identical with words employed in the act to describe one of the subjects brought within its purview, viz., "safe deposit" corporations; and the name so chosen is one entirely appropriate to, and strictly expressive of, the purposes of its creation.　These are, as the certificate declare, "to keep and maintain safe deposit vaults and safes and strong boxes for the safe keeping of valuable articles and property of all kinds."

The question to be determined is whether, by reason of the name so adopted by the corporation certificate, and because of the objects and purposes which it aims to work out in its

future, or either of these, bring it within the spirit and meaning of the enactment in question. If it be embraced within the restrictive law of 1890, the relators must fail in their suit, for they have not in their organization the required capital; nor has the incorporation received the approval of the board of bank commissioners. But if, on the other hand, this company is not, in the legislative intent, included within its provisions, then, as the act of the secretary of state becomes, in receiving the certificate, purely a ministerial one, *mandamus* should issue as the appropriate and only legal remedy of relators.

It will, as I think, serve no useful purpose to attempt analysis of the act of 1890. Its design will, on reading the text, be apparent. It intended to treat exclusively of financial corporations and associations, such as banking companies, savings institutions and others designed to derive profit from the loan or use of money or securities. Such clearly appears to be its general purpose, and each of its details plainly aims at the regulation of such institutions for the public protection; and not one of them is appropriate to corporations like that formed by the relators, or possessed of any meaning when applied to such.

This company is organized under the general law concerning corporations. The expression in its certificate of incorporation of the objects to be promoted binds it in the use of its franchises to such purposes; and the force of the declaration of its designs will exclude it from the right to deal in money or securities. But, beside this, by the proviso to the tenth section, as well as under the terms of the fourth section of the same statute, the exercise of such powers is expressly withheld from corporations formed under the act.

That the company, in the choice of its name, has fallen upon one that is within the words of the act of 1890, is not a circumstance of controlling importance. Had it been the only name permissible to it in its organization, still if it be found without the reason and spirit of the law, it is not within the law.

In the construction of statutes, words are aids—important ones it is true—yet only aids in judging the legislative intent; and when a statute uses words of general import, the question is opened whether an object, within the words, is within the purview of the law, which means the intent of the lawmaker.  *Cox* v. *Hakes, L. R.*, 15 *App. Cas.* 506.

In Cox v. Hakes the Lord Chancellor, after a careful review of the earlier English cases, presented as the result an accepted canon of construction in these words, viz.: "From which cases it appears that the sages of the law heretofore have construed statutes quite contrary to the letter in some appearance; and those statutes which comprehend all things in the letter, they have expounded to extend but to some things, and those which generally prohibit all people from doing such an act, they have interpreted to permit some people to do it, and those which include every person in the letter, they have adjudged to reach to some persons only, which expositions have always been founded on the intent of the legislature, which they have collected sometimes by considering the cause and necessity of making the act, sometimes by comparing one part of the act with another, and sometimes by foreign circumstances, so that they have ever been guided by the intent of the legislature, which they have always taken according to the necessity of the matter, and according to that which is consonant to reason and good discretion."

The terms of the act in question, which have been supposed to apply to relators, will by no means be stripped of their force by the withdrawal of the relators' association and kindred bodies from their operation. It will need but slight search among our statutes to ascertain what class of corporations denominated safe deposit companies were really aimed at by the restrictive legislation of 1890.

An act was passed in 1885 entitled "An act for the incorporation of safe deposit and trust companies." *Rev. Sup., pp.* 889, 890. Supplements to this act were passed in each of the three years following, the result of all which was to confer upon corporations organized thereunder large and important

financial powers.   Banks could be established upon trifling and insignificant capital.   Still greater powers could, under this series of enactments, be grasped and exercised without responsibility or adequate security to the public.   Against these the legislature may with good reason have provided in protection of the general interest and safety.   That these are within the purview of the act of 1890, and brought under its restraining and supervising regulation, there can be no doubt. But, I think, it is equally clear that the act does not apply to the relators, nor, indeed, to any corporation that can be legally organized under the General Corporation act.

Therefore, a peremptory *mandamus* should go in accordance with the prayer of the relators, but without costs.

It is so ordered.